United States District Court
Southern District of Texas
**ENTERED**
March 14, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYLVIA GONE', *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-00684 |
| | § | |
| J E SMITH II, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM & ORDER**

This case arises out of a traffic stop and the subsequent tasing, arrest and detention of two women in Pasadena, Texas. Before the Court is Defendants' Motion to Dismiss Plaintiffs' Claims. (Doc. No. 18.) After considering the motion, the response thereto and the applicable law, the Court finds that that motion must be granted in part and denied in part.

**I.     BACKGROUND**

On April 19, 2014, Plaintiffs Sylvia Goné and Esmerelda Alejandro were apprehended by police officers at a gas station in Pasadena. Plaintiffs have sued Officers John Edward Smith II, Juan Manrique Salazar and Richard D. Thornton (collectively, "Officer Defendants") and the City of Pasadena ("the City") for conduct that followed.

The facts in this section are drawn from Plaintiffs' complaint (Doc. No. 16), unless otherwise noted. Ms. Goné and Ms. Alejandro were driving on Southmore Street in Pasadena, where they made a U-turn to enter a gas station. As Ms. Goné was pumping gas, Officer Smith approached her and asked for her identification. Ms. Goné asked what she was being stopped for, and Officer Smith said he did not have to tell her. Officer Smith then handcuffed Ms. Goné's wrists to the headrest in her car, pointed a taser gun at her face, and squeezed her hand to the

1

point that it caused pain. Ms. Goné loudly yelled "abuse," and Officer Smith then tased her. (Doc. No. 16 ¶¶ 7-15.)

At that point, Ms. Alejandro exited the vehicle and began recording Officer Smith's actions. Ms. Alejandro told him that Ms. Goné had medical issues and tasing might cause her harm. Officer Smith replied, "sounds like a personal problem." Upon instruction from Officer Smith, Officers Salazar and Thornton then detained Ms. Alejandro. (Doc. No. 16 ¶¶ 16-19.)

Officer Smith used his taser at least two more times on Ms. Goné. The complaint states that the three Officer Defendants then removed Ms. Goné's handcuffs, dragged her out of the car, and threw her on the ground. They had their feet on her back and neck, and beat and tased her. The officers called paramedics to the scene and eventually drove and booked Ms. Goné in jail. Ms. Goné writes that "[she] looked so bad by the time [she] got to court that even the Judge was shocked," and some of her bruises took months to heal. (Doc. No. 16 ¶¶ 16-19; Silvia Goné Affidavit, Doc. No. 1, Ex. B.)

Officer Smith's incident report, attached to Plaintiffs' original petition, characterizes the events differently. (Doc. No. 1, Ex. D.) The most significant differences begin when Officer Smith asked Ms. Goné for her identification; she refused to provide it and sat down in the backseat of her car. According to the report, Officer Smith warned Ms. Goné that he would arrest her for failure to identify and asked her to get out of the car. When she refused, Officer Smith reached into the car and cuffed her left wrist. Ms. Goné began to kick at Officer Smith, who then attached the handcuff to the driver's headrest. Officer Smith pulled out his taser gun and advised Ms. Goné to keep her hands in his sight. Officer Smith acknowledged deploying the taser several times, always noting that Ms. Goné had ignored his instructions to keep her hands in sight.

Officer Smith filed charges on Ms. Goné for resisting arrest, and on Ms. Alejandro for interfering with a public servant.

Plaintiffs have raised several claims, all arising out of this incident: excessive force, false arrest, intentional infliction of emotional distress, and false imprisonment under state law. (Doc. No. 16.) Defendants seek to dismiss all of Plaintiffs' claims.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (quoting *Twombly*, 550 U.S. at 570).

The key question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 680 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). The court should not evaluate the merits of the allegation, but

must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Civil rights plaintiffs who face a qualified immunity defense must "allege specific facts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Those facts must be alleged in the complaint itself or in its attachments. *See Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *see also* Fed. R. Civ. P. 10(c). When ruling on a motion to dismiss, a court "may not look beyond the pleadings." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999).

### B. Qualified Immunity

Qualified immunity protects government employees against civil liability in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wernicke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009). Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable under the circumstances presented in the case. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 408 (5th Cir. 2007). Thus, the doctrine of qualified immunity shields from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The burden is on the plaintiff to overcome a defendant's defense of qualified immunity." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).

To determine whether a state official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts engage in a two-prong inquiry. *Pearson v. Callahan*, 555 U.S. 223 (2009). "[T]he first step is to determine whether plaintiff alleged a violation of a clearly established constitutional right and the second step requires determining whether . . . the

official's conduct was objectively reasonable under clearly established law existing at the time of the incident." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). The reviewing court may consider these prongs in either sequence. *Pearson*, 555 U.S. at 235.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal citations omitted). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006) (citing *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)). A plaintiff bears the burden of showing that an official violated clearly established law." *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 456 (5th Cir. 2001).

The second step is determining the reasonableness of the defendant's alleged conduct. "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457.

### III. ANALYSIS

#### A. Federal Claims Against Officer Defendants

Plaintiffs have brought claims against the Officer Defendants for excessive force, false arrest and intentional infliction of emotional distress in violation of the Fourth and Fourteenth

Amendments to the United States Constitution and 42 U.S.C § 1983. Defendants assert that Plaintiffs have failed to identify any cognizable claim under the Fourteenth Amendment or any unconstitutional conduct in violation of the Fourth Amendment. Further, Defendants argue, even if there were a valid Fourth Amendment claim, the doctrine of qualified immunity protects the Officer Defendants. (Doc. No. 18 ¶¶ 7-15.)

The Court agrees with Defendants that Plaintiffs have not pled a viable Fourteenth Amendment violation. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 394 (1989)). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274. Because the Fourth Amendment covers excessive force and unlawful arrest, the Plaintiffs should not and cannot seek relief under the Fourteenth Amendment. Thus, the Court will consider the claims under the Fourth Amendment, as they apply to each Plaintiff and Officer Defendant.

### 1. Excessive Force

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394. "The Fourth Amendment right to be free from excessive force during a seizure is clearly established." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Plaintiffs allege that Officer Smith violated Ms. Goné's Fourth Amendment rights by handcuffing her, squeezing her hand in an effort to cause her pain, and tasing her—all without justification. (Doc. No. 19 at 5-6.) Officers Thornton and Salazar allegedly violated the

Constitution by letting Officer Smith tase Ms. Goné unnecessarily, putting their feet on Ms. Goné's back and neck with her face to the ground while she was tased again, and arresting Ms. Alejandro in retaliation for her criticism of the officers. (Doc. No. 19 at 10-11.)

To establish a claim under § 1983 for excessive use of force, a plaintiff must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Goodman*, 571 F.3d at 397. The reasonableness determination is objective and particular to the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Considering the facts in the light most favorable to Plaintiffs, Ms. Goné has a viable excessive force claim against Officer Smith. Courts have distinguished between two types of cases involving tasers:

> "The first involves plaintiffs tased while actively resisting arrest by physically struggling with, threatening, or disobeying officers . . . . The second group of cases involves a law enforcement official tasing a plaintiff who has done nothing to resist arrest or is already detained. In the first category, where the suspect is resisting arrest or disobeying the officers' orders, tasing may not be considered excessive force. Courts faced with the second category hold that a § 1983 excessive-force claim is available, since the right to be free from physical force when one is not resisting the police is a clearly established right."

*Davis v. City of Port Aransas, Tex.*, No. 2:14-CV-80, 2015 WL 758278, at *4 (S.D. Tex. Feb. 23, 2015) (citing *Cockrell v. City of Cincinnati,* 468 F.App'x 491, 495 (6th Cir.2012)). The inquiry is thus whether Ms. Goné actively resisted arrest. According to the complaint, Ms. Goné was already cuffed to the headrest of her car when Officer Smith began to tase her. (Doc. No. 16 ¶ 11-15.) She did not have the opportunity to resist arrest before he began to use force.

7

Courts also consider whether officers escalated their responses based on the plaintiff's level of resistance. Before deploying a taser, officers are expected to use verbal commands, negotiation, and lesser physical force. *See Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); *Poole*, 691 F.3d at 628. Additionally, "the force calculus changes substantially once that resistance ends." *Curran v. Aleshire*, 800 F.3d 656, 662 (5th Cir. 2015). The complaint presents evidence of some, but only minimal, escalation. Officer Smith asked for Ms. Goné's identification, and there is no indication that she complied. (Doc. No. 16 ¶ 9.) He then cuffed Ms. Goné, squeezed her hand, and repeatedly used a taser. Ms. Goné's resulting injuries were supposedly severe, although she does not specify the harm. (Doc. No. 16 ¶¶ 11-24.) The quick escalation and tasing do not meet the "measured and ascending" response requirement.

Two other facts favor Ms. Goné's claim. First, the underlying alleged offense—a traffic violation—was relatively minor. *See Newman*, 703 F.3d at 762; *Davis v. City of Port Aransas, Tex.*, No. 2:14-CV-80, 2015 WL 758278, at *5 (S.D. Tex. Feb. 23, 2015). Second, Ms. Goné did not pose a credible safety threat. Contrast Ms. Goné's conduct with cases in which a physically strong plaintiff had charged at officer and wrestled with him over pepper spray canister (*Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010)) or where a suspect refused to put down the rifle he pointed toward law enforcement officers (*Ballard v. Burton*, 444 F.3d 391, 402–03 (5th Cir. 2006)). Although Ms. Goné was yelling and allegedly kicking at Officer Smith (while cuffed to the car), she was not in a position to harm him, and two other armed officers were present at all times.

The Court acknowledges the weaknesses in Ms. Goné's excessive force claim. First, Officer Smith's tasing and the other officers' alleged beatings are not as egregious as some other cases that have overcome qualified immunity defenses. *See, e.g., Graham*, 490 U.S. at 389–90

(officers threw diabetic man face down onto hood of car, refused to give him orange juice, injured his foot and shoulder, and caused permanent ringing in ear); *Curran*, 800 F.3d at 662 (officer slammed high school student into wall); *Newman*, 703 F.3d at 762 (officers pushed plaintiff onto trunk of car and beat him with baton). Second, Ms. Goné may have been less compliant than other prevailing plaintiffs. *See, e.g., Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (officers tased and pepper sprayed person who was driving away upon command of officers); *Backe v. City of Galveston* (S.D. Texas, Feb. 27, 2014) (officers subjected plaintiffs to forcible takedown without giving opportunity to submit voluntarily to their control). Third, one court construed the fact that officers called a medical team as a sign of no excessive force. *See Poole,* 691 F.3d at 628. Medics were called to treat Ms. Goné. (Doc. No. 1, Ex. D; Doc. No. 16, Ex. A.) In spite of these potential vulnerabilities, Plaintiffs have pled facts to show that Ms. Goné was tased and forcibly removed from her vehicle while she was not violently resisting the officers' instructions. Potentially material questions about Ms. Goné's resistance and Officer Smith's escalation and excessiveness are issues of fact and should be resolved, at this preliminary stage, in favor of Plaintiffs. *See Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996).

Ms. Goné's excessive force claim against Officers Thornton and Salazar, in contrast, cannot overcome the motion to dismiss. The claim rests on both bystander and direct liability. The two officers' failure to stop Officer Smith from tasing Ms. Goné does not rise to the level of other bystander cases. For example, in *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995), one officer stood by, laughed and yelled words of encouragement while the other acted in violent and obscene ways toward the plaintiff. Plaintiffs in this case have not pled comparably specific facts about bystander liability. Ms. Goné also alleges that Officers Thornton and Salazar shoved her to the ground and put their feet on her neck and back. (Doc. No. 16 at ¶ 23.) However, the dash cam

9

video shows less forceful conduct by Officers Thornton or Salazar. Although the Officer Defendants removed Ms. Goné from the vehicle and positioned her on the ground, the video gives no indication that Officers Thornton and Salazar caused Ms. Goné's injuries or used force that was excessive or objectively unreasonable. (Doc. No. 16, Ex. A) The complaint and video taken together do not establish an excessive force claim against Officers Thornton and Salazar.

Likewise, Ms. Alejandro has not provided sufficient information as to how the Officer Defendants used excessive force against her. When a plaintiff faces a qualified immunity defense, "the complaint must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citation omitted). The complaint itself does not include facts regarding the officers' use of force against Ms. Alejandro, but Plaintiffs contend that the dash cam video shows Ms. Alejandro being "viciously cuffed and slammed against the vehicle." (Doc. No. 19 at 13-14.) Although the video reveals that Officer Smith ordered Officers Thornton and Salazar to handcuff Ms. Alejandro, it does not display any violence, slamming, or unreasonable force. (Doc. No. 16, Ex. A.) Therefore the Court finds that Plaintiffs have not provided the required detailed factual information, and dismisses Ms. Alejandro's excessive force claim against the Officer Defendants.

### 2. False or Unlawful Arrest[1]

Plaintiffs allege the Officer Defendants violated the Fourth Amendment by arresting Ms. Goné and Ms. Alejandro without legal justification or probable cause. (Doc. No. 16 ¶ 33.) "The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir.1994). "The test for probable cause is whether

---

[1] Plaintiffs have pled a claim of "false arrest." After considering the substance of Plaintiffs' allegations under this claim, the Court finds the term "unlawful arrest" is more appropriate.

the officer, at the time of arrest, had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. Police officers who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity." *Id.*

Plaintiffs claim that "Defendants knew that Plaintiffs had not committed any crimes, and still continued to effectuate the arrest, detention, and prosecution of the Plaintiffs for the charge." Plaintiffs contend Ms. Alejandro had not been charged with a crime nor received a citation at the time she was detained and arrested. They declare Ms. Goné's arrest lacked probable cause because Officer Smith neither wrote a traffic citation nor asked her to sign it, and there were no prior charges or warrants for her. Plaintiffs argue these would have been the only grounds for Ms. Goné's arrest. (Doc. No. 16 ¶¶ 35-39.)

According to Officer Smith's police report, he asked to see Ms. Goné's identification after she committed a traffic violation. (Doc. No. 1, Ex. D.) "The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Garza*, 452 F. App'x 510, 511 (5th Cir. 2011) (citing *Whren v. United States,* 517 U.S. 806, 810 (1996); Texas Transportation Code § 545.102). Plaintiffs acknowledge that Ms. Goné made a U-turn into the gas station, and neither admit nor deny that Ms. Goné refused to show her identification. (Doc. No. 16 ¶¶ 7, 10.) Ms. Goné was ultimately arrested for resisting arrest and/or search. (Doc. No. 1, Ex. D.) Because the original stop was reasonable and Ms. Goné then allegedly resisted arrest (according to the police report), a prudent person could believe Ms. Goné had committed or was committing a crime. Ms. Goné has therefore not alleged facts to overcome the Defendant Officers' qualified immunity defenses.

Ms. Alejandro's unlawful arrest claim is another matter. Ms. Alejandro was charged with interfering with a public servant. (Doc. No. 1, Ex. D.) She had recorded Officer Smith's interactions with Ms. Goné and told him about Ms. Goné's medical issues. Officer Smith then told Officers Thornton and Salazar to "cuff her ass." Plaintiffs maintain that Ms. Alejandro did not pose a threat to the officers. (Doc. No. 16 ¶¶ 16-19.) The Fifth Circuit has found there was no probable cause to arrest a woman who "did nothing but tell the police officers to leave her son alone. Her speech neither rises above inconvenience, annoyance, or unrest, nor does it constitute an incitement to immediate lawless action." *Massey*, 477 F. App'x at 264. Ms. Alejandro's conduct is similar to the actions of the *Massey* arrestee. Her unlawful arrest claim overcomes the qualified immunity defense against all Officer Defendants because Officer Smith ordered the arrest, and Officers Thornton and Salazar effectuated it.

### 3. Intentional Infliction of Emotional Distress

Plaintiffs have raised a claim under federal law for intentional infliction of emotional distress (IIED). IIED is a state tort. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010). It may not be addressed through a § 1983 action. *See Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991) ("Section 1983 is a federally created cause of action to redress civil rights violations.") Although Plaintiffs cite numerous cases in which courts did not bar IIED claims, the United States government was a party in those cases. *See, e.g. United States v. Neustadt*, 366 U.S. 696 (1961); *Leleux v. United States*, 178 F.3d 750 (5th Cir. 1999); *Schwarder v. United States*, 974 F.2d 1118 (9th Cir. 1992); *Grost v. United States*, No. EP-13-CV-158-KC, 2014 WL 1783947 (W.D. Tex. May 5, 2014). These IIED actions pursued under the Federal Tort Claims Act are inapplicable here. Defendants in the instant case are a municipality and local officials, not the federal government.

Further, even Plaintiffs had pled IIED as a state claim for relief, it would fail for the reasons stated in the next section. Therefore, Plaintiffs' IIED claim must be dismissed.

### B. State Law Claim Against Officer Defendants

Plaintiffs seek relief for their claim of false imprisonment under state law. As Plaintiffs do not specify if the claim is brought against some or all of the Defendants, the Court presumes the Plaintiff seeks redress from the City and the Officer Defendants. Defendants argue that, because Plaintiffs chose to sue the City, they are permanently barred from suing the Officer Defendants for the same state law claim. The Court agrees. "If a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, [the Texas Civil Practice and Remedies Code] § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Bustos*, 599 F.3d at 463. The Court has no discretion here: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees *shall immediately be dismissed* on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (emphasis added); see also *Texas Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 417 (Tex. 2015). Because Defendants (including the City) filed a motion to dismiss, the Court must dismiss the state law claims against the Officer Defendants.

### C. Claims Against the City of Pasadena

Plaintiffs have named the City as a defendant but have not discussed the City's conduct or policies in the complaint. "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The municipality as an entity is responsible under § 1983 only when it has a policy or custom that inflicted the alleged injury. *Id; see also Connick v. Thompson*, 563

13

U.S. 51, 60 (2011). Because Plaintiffs have not pled facts that suggest the City has a policy or custom that inflicted the Plaintiffs' injury, the § 1983 claims against the City must be dismissed.

Governmental immunity bars Plaintiffs' state law claims against the City as well. Governmental units in Texas are presumed immune from suit, unless the Texas Tort Claims Act (TTCA) expressly waives immunity. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004). The TTCA governs Plaintiffs' false imprisonment claim because it is a common law tort claim against a governmental unit. *See Texas Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 419 (Tex. 2015); *Franka v. Velasquez,* 332 S.W.3d 367, 379 (Tex. 2011); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). A plaintiff bears the burden of demonstrating that the governmental unit has waived its immunity. *The Univ. of Texas at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (citing *Miranda*, 133 S.W.3d at 226.) Plaintiffs fail to show that the City has waived its immunity from suit. Therefore Plaintiffs cannot proceed with their state law claims against the City.

### IV. CONCLUSION

For the aforementioned reasons, the Court dismisses: all claims against the City; Plaintiffs' claim for intentional infliction of emotional distress; Plaintiffs' claim for false imprisonment; Ms. Alejandro's claim against the Officer Defendants for excessive force; and Ms. Goné's claim against the Officer Defendants for unlawful arrest. The Court finds that the following claims are not dismissed: Ms. Goné's claim against Officer Smith for excessive force, and Ms. Alejandro's claim against the Officer Defendants for unlawful arrest. Defendants' motion to dismiss (Doc. No. 18) is hereby **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 14th day of March, 2017.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE